The J. F. WHITE ENGINEERING CORPORATION, and General Insurance Company of America, Appellants,

v.

UNITED STATES of America for the Use of PITTSBURGH PLATE GLASS COMPANY, Appellee.

UNITED STATES of America for the Use of PITTSBURGH PLATE GLASS COMPANY, Cross-Appellant,

v.

The J. F. WHITE ENGINEERING CORPORATION, and General Insurance Company of America, Cross-Appellees.

Nos. 7031, 7032.

United States Court of Appeals Tenth Circuit.

Dec. 22, 1962.

Harold B. Wagner, Denver, Colo. (Raymond A. Wagner and Carl A. Wyers, Denver, Colo., on the brief), for appellants and cross-appellees.

William E. Kenworthy, Denver, Colo. (Fugate, Mitchem, McGinley & Hoffman, Denver, Colo., on the brief), for appellee and cross-appellant.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

PICKETT, Circuit Judge.

This is a case under the Miller Act, 49 Stat. 793, (1935), 40 U.S.C.A. § 270a et seq., in which Pittsburgh Plate Glass Company, a subcontractor, seeks to recover a balance alleged to be due under its subcontract from the J. F. White Engineering Corporation and its bondsman. White was the prime contractor for the construction of two heating plant buildings at the United States Air Force Academy at Colorado Springs, Colorado. Pittsburgh's subcontract required it to furnish the glass and do the glazing work for these two buildings according to the specifications of the prime contract which provided that, upon completion of the work, labels, paint and smears were to be removed, and the glass washed clean. Pittsburgh concedes that its subcontract obligated it to clean the glass and window frames after installation, as specified in the prime contract. The dispute here arises from the claim of White that, as a result of Pittsburgh's failure to do the necessary cleaning, White was required to expend $2700 to have it done, and could, therefore, withhold that amount from the balance due on the subcontract. The trial court held that Pittsburgh had complied with the cleaning requirements of the subcontract in all respects, except one for which a credit of $500 was allowed, and a judgment for $2200 was entered for Pittsburgh. Both parties have appealed.

The record indicates that Pittsburgh substantially performed the contractual requirements relating to the glass and glazing work during the year 1957. Early in 1958 White demanded that

Pittsburgh do the necessary cleaning work. After considerable discussion and correspondence, Pittsburgh employed a third party to do the cleaning which was completed in April of 1958. A number of witnesses testified that after Pittsburgh's employees had completed their work, the windows were clean, and, although there was constant inspection by government inspectors, there is no indication that the work was not at that time satisfactory to the United States.[1] There is evidence that after Pittsburgh had finished the cleaning, other workmen in the buildings engaged in painting and spraying work which had nothing to do with Pittsburgh's glass work.[2] The clear inference from this evidence is that, between the time that Pittsburgh completed its work and the completion of the contract, other activities by White, not related to the work of Pittsburgh, created conditions which required additional cleaning. The prime contract provided that the work on the project would not be accepted until approved by the contracting officer representing the United States. Several months after Pittsburgh had completed the glass and glazing work the United States notified White that additional cleaning of the windows and frames was necessary before the job would be accepted, and final payment made. Pittsburgh refused to do any further cleaning, and White expended $2700 for this work before the job was approved.

■■ We agree with the findings of the trial court that when Pittsburgh had completed its work in compliance with its subcontract, including the necessary

cleaning as demanded by White, it was not obligated to perform further cleaning which was thereafter necessitated by workmen doing other work for White. Fanderlik-Locke Co. v. United States for the Use of Morgan, 10 Cir., 285 F.2d 939, cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823; United States for the Use of Ardmore Concrete Material Co. v. Williams, 10 Cir., 240 F.2d 561. The court's findings are sustained by substantial evidence, are not clearly erroneous, and, therefore, must be sustained on appeal. E. g., Fanderlik-Locke Co. v. United States for the Use of Morgan, supra; Wunderlich Contracting Co. v. United States ex rel. Reischel & Cottrell, 10 Cir., 240 F.2d 201, cert. denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859.

In its answer White asserted the affirmative defense of accord and satisfaction. This defense was submitted on an agreed statement of facts consisting of correspondence between the parties together with White's statement of the balance due on the subcontract after charging off the $2700 in question. Two statements were forwarded by White to Pittsburgh, accompanied by checks for the amounts shown to be due according to the statements. When the statements were received, the checks were cashed, but in each instance Pittsburgh notified White that it did not acquiesce in the arbitrary $2700 charge against the account, and demanded payment for the chargeoff.

■■ An accord and satisfaction of a disputed claim rests on contract, and all the essentials of a valid contract must be present. This requires an acceptance by

1. A government engineer, whose duty it was to "see to it that the job was constructed in accordance with the plans and specifications, and that the government received the job as laid out by the architects and engineer", testified that he observed various people doing the window cleaning and that if there had been any deficiency, it would have been noted in a daily log book, and the contractor would have been notified within a matter of hours or days as to any deficiency.

2. A government inspector, who kept a daily log of work on the heating plant buildings, including the cleaning of the windows, testified:
   "Pittsburgh Glass cleaned the windows immediately after they were installed, but I don't know exactly when this was. I saw the cleaning as it progressed, but there were a lot of things to be done which would leave the windows anything but clean, including installation of pipe, painting, and a lot of things in the Academic Area Heating Plant."

the creditor of an offer by the debtor to pay a lesser amount in full settlement of the creditor's claim. Hoeppner Const. Co. v. United States for the Use of Trautman & Shreve, Inc., 10 Cir., 273 F.2d 835; 1 C.J.S. Accord & Satisfaction § 3 (1936). "In order to constitute an accord and satisfaction, it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions." Pitts v. National Independent Fisheries Co., 71 Colo. 316, 206 P. 571, 34 A.L.R. 1033. Pospicil v. Hammers, Colo., 365 P.2d 228; Western Air Lines, Inc. v. Hollenbeck, 124 Colo. 130, 235 P.2d 792. The record here is wholly devoid of any evidence that the parties understood that the checks delivered to Pittsburgh were to be in full settlement of the amount claimed to be due on the subcontract, and the letters transmitting the statements and checks do not so indicate. The essentials of an accord and satisfaction are not present.

White next contends that the court erred in allowing interest on the amount found to be due. The amount of the award was due Pittsburgh under its written contract. There was substantial compliance with the terms of the contract by Pittsburgh, and it was entitled to interest from the date that the balance became due. Colo.Rev.Stat.1953, § 73–1–2; Baer Brothers Land and Cattle Co. v. Reed, 10 Cir., 197 F.2d 569; City of Denver v. Barber Asphalt Paving Co., 8 Cir., 141 F. 69; Harvey v. Denver & R. G. R. R., 56 Colo. 570, 139 P. 1098; Idaho Gold Coin Mining & Milling Co. v. Colorado Iron Works Co., 49 Colo. 66, 111 P. 553; Donley v. Bailey, 48 Colo. 373, 110 P. 65.

In its cross-appeal Pittsburgh assigned as error the deduction of $500 from the $2700 claimed to be due on the subcontract. This alleged error was not supported in Pittsburgh's brief, nor was it urged at oral argument. It is, therefore, waived. Legg v. Rock Prod. Mfg. Corp., 10 Cir., 309 F.2d 172; Maher v. Cities Serv. Pipe Line Co., 10 Cir., 286 F.2d 313; Roberts v. Sawyer, 10 Cir., 252 F.2d 286; Scott v. Beams, 10 Cir., 122 F.2d 777, cert. denied 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208.

Affirmed.